ORIGINAL

Send
ENTER
Closed

FILED
CLERK, U.S. DISTRICT COURT
JUL - 3 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
JUL 7 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

INTERNATIONAL RECTIFIER CORPORATION,
    Plaintiff,

vs.

SAMSUNG SEMICONDUCTOR, INC., et al.
    Defendants.

CASE NO. CV 98-0433-R

ORDER RE CONTEMPT

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

This matter came on for hearing on April 14, 2003 to determine what sanction, if any, should be levied against Samsung Semiconductor, Inc. for its contumacious conduct after this Court entered a permanent injunction prohibiting Samsung from making, using, offering for sale, or selling in or importing into the United States, components, devices, or products infringing any claim of International Rectifier's United States Patent No. 4,959,699.

### STATEMENT OF FACTS

This Court has entered findings of fact and conclusions of law on the issue of contempt based on arguments submitted and heard in connection with the order to show cause hearing that was held on March 19 and May 18, 2001. Those findings and conclusions have been adopted *nunc pro tunc* and form the basis of the Court's decision here.

### DISCUSSION

Given the history of transactions between Samsung and IXYS leading up to the issuance of the

292

injunction, and as a result of the joint investigation conducted by Samsung and IXYS in October 1999, Samsung clearly knew that at least some of the devices it was producing under the foundry agreement were being shipped into the United States. Samsung's counsel further confirmed Samsung's knowing violation(s) of the injunction upon the Court's inquiry in May 2001.

The imposition of sanctions for contempt of the injunctions entered herein is left to the discretion of this Court. Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1390 (9th Cir. 1995). Sanctions can be imposed in this matter to compensate IR for injuries resulting from Samsung's noncompliance. Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir. 1983). Compensatory contempt sanctions must be based on the injured party's actual losses sustained as a result of the contempt. Id. at 1148.

The actual gross profit earned by Samsung is an appropriate measure of the reasonable royalty IR should receive as a result of Samsung's contempt. State Indus. Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580-81 (Fed. Cir. 1989). In order to calculate the applicable royalty rate this Court must first clarify and decide a factual dispute between IXYS and Samsung as to the total number of infringing devices manufactured for IXYS under the foundry agreement and imported into the United States. IXYS claims that between May 1999 and 2002, a total of 232,175 devices were produced under the foundry agreement that would be covered by the Court's injunctions. Samsung, on the other hand, claims a number slightly more than half that size, 123,839. This Court deems it appropriate to adopt Samsung's figures in this regard. While Samsung clearly has its own motivation for minimizing its liability, IXYS also has more that enough reason to seek to enlarge Samsung's liability because in so doing it reduces its own. In addition, IXYS has not adequately demonstrated why its figures are more accurate than Samsung's.

Samsung's stated average price for the devices in question is $282.29. In addition, Samsung has indicated that its net profit margin on the devices is 39.79%. Based on these figures, Samsung's revenue during the contempt period from the devices in question was $34,958,511 and its net profit was $13,909,992. IR has stated that the reasonable royalty rate in 1999 on sales of devices such as those at issue here was 21%. Dr. Weinstein, whom Samsung and IXYS presented as their expert in these proceedings, indicated that the reasonable royalty rate for that same period was 20%. Given that the discrepancy between these figures is so small, the Court adopts the 20% figure for greater ease in

calculation. The use of that percentage yields a royalty payable to IR in the amount of $6,991,702.

Samsung has rightly demonstrated that a substantial portion of the compensation due IR as a result of Samsung and IXYS' activities has already been levied against IXYS by way of the judgment in the International Rectifier v. IXYS (CV 00-06756) litigation in this Court. That judgment however in no way mitigates all of the damages for which Samsung is liable. In the IR/IXYS matter, $4.5 million of the jury's damages award was attributable to Samsung's MOSFET sales. The Court therefore finds that Samsung should receive a dollar for dollar credit up to a maximum of $4.5 million for any damages award paid by IXYS. Samsung, of course, will be liable for all amounts in excess of that amount.

In the consent settlement that gave rise to these contempt proceedings, Samsung agreed that in any action to enforce the order and judgment or the Agreement itself, attorney's fees and costs would be awarded to the prevailing party. Based on the declarations and exhibits submitted by counsel, it is appropriate for International Rectifier to receive $350,000 in attorney's fees.

### ORDER

Based on the foregoing Samsung shall pay International Rectifier damages in the amount of $6,991,702 and shall further compensate IR in an amount of $350,000 in attorney's fees for a total award of $7,341,702. It is so ORDERED.

DATED: **July 3, 2003**

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE